JOURNAL ENTRY and OPINION
{¶ 1} Appellant Maurice Bates appeals his conviction for failure to comply with an order or a signal of a police officer. On appeal, he assigns the following errors for our review:
"I. BATES'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL WERE DENIED WHENTHE TRIAL COURT FAILED TO SUPPRESS THE IDENTIFICATION RESULTING FROM THEIMPROPER AND UNDULY SUGGESTIVE IDENTIFICATION PROCEDURE."
 "II. BATES WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THESTATE'S KEY WITNESS WAS PERMITTED TO TESTIFY THAT BATES WAS ON PROBATIONAND HAD BEEN AT A COURT APPEARANCE WHEN HE MET WITH HIM ABOUT THISCASE."
 "III. THE CONVICTION FOR POSSESSION OF CRIMINAL TOOLS IS AGAINST THEMANIFEST WEIGHT OF THE EVIDENCE AND, IN ADDITION, IS BASED ON EVIDENCETHAT IS CONSTITUTIONALLY INSUFFICIENT."
 "IV. BATES WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TOFOLLOW THE STATUTORY GUIDELINES IN IMPOSING A SENTENCE FOR FELONY FAILURETO COMPLY."
 "V. BATES WAS DENIED DUE PROCESS OF LAW WHEN THE TRIAL COURT IMPOSED ASENTENCE FOR FAILURE TO COMPLY THAT WAS MADE CONSECUTIVE TO A SENTENCEIMPOSED IN AN UNRELATED CASE."
 {¶ 2} Having reviewed the record and pertinent law, we reverse and remand for a new trial. The apposite facts follow.
 SINGLE LEADS PHOTOGRAPH IDENTIFICATION {¶ 3} Bates asked the court at his suppression hearing to exclude Sgt. Franczak's testimony regarding the unduly suggestive single Law Enforcement Automated Data System (LEADS) photo identification as well as the in-court identification. Sgt. Franczak, the arresting officer and sole witness in this case, identified Bates from a single LEADS photograph. The events leading to the identification establish that the photograph identification constituted an unduly suggestive identification, which should have been excluded under the due process clause.
 {¶ 4} Sgt. Franczak testified he observed a driver of a Honda in Linndale at I-71 northbound exceeding the speed limit. He motioned for the driver to stop; but the driver sped away, and a chase ensued. The police camera did not show the face of the driver or the passenger. The officer could only see the back of the heads of both men.
 {¶ 5} When the car came to a stop at Martin Luther King Boulevard, both men exited the vehicle and escaped through a fence, leaving the Honda. Sgt. Franczak observed the driver's profile, identifying him as a short, stocky, black male between the ages of 18 to 20 years old. As the driver crouched through the fence, the officer, who was 25 to 35 feet away, could see the driver's face. He could not see the driver's eyes nor could he describe his clothing.
 {¶ 6} The officer returned to the Honda. The cell phone in the car rang and the caller asked for Maurice. Sgt. Franczak pretended to be Maurice, but the caller hung up.
 {¶ 7} Upon further inventory of the Honda, the officer found two bags of what was later identified as marijuana, a magazine clip with seven live rounds of ammunition, and a photograph of four black males. The officer learned later that Maurice's twin brother was one of the males in the picture. But, the officer never identified or said the twin resembled Maurice, and we have no evidence in this record that the twin brother resembled Maurice.
 {¶ 8} The officer returned to the station, ran a check on the vehicle, and called the owner, Renee Tate. He inquired whether Maurice had her car. After she confirmed that he did, he asked her for his date of birth and address. He ran a LEADS photograph and obtained Bates' BMV imagery photograph. When he saw the photograph, he said "he immediately recognized Maurice as the short, stocky individual driving the Honda."
 {¶ 9} During cross-examination, Sgt. Franczak stated he could not see in the car during the chase. He admitted after the men exited the car he was too far away to see anything other than that the driver was a short, stocky male, 18 to 20 years old. He stated he received the LEADS photograph within two hours of the chase.
 {¶ 10} After obtaining the LEADS photograph, Sgt. Franczak unsuccessfully attempted to contact Bates. However, about five days after the car chase, Bates voluntarily came to the Linndale Police Department. Bates told Sgt. Franczak the car belonged to his girlfriend, but denied driving it the day of the incident, and suggested his girlfriend's brother might have driven the car on the date in question. Bates admitted the cell phone and the picture of the four young black males belonged to him, but denied ownership of the marijuana and the loaded magazine that the officer found in the car. Bates was not arrested at this time. He was not arrested until after the State indicted him on February 6, 2004.
 {¶ 11} Renee Tate also testified at trial; she said that Bates was her boyfriend at the time of the incident, and he regularly used her car. She did not know whether he allowed others to use her car. Tate identified Bates' brother Mario as one of the individuals in the photograph Sgt. Franczak found in her car. She testified that Mario is Bates' identical twin. Finally, Tate stated Bates called her after the car was found and asked why she had not reported it stolen.
 {¶ 12} The jury found Bates guilty of failure to comply with an order or signal of the police and possession of criminal tools. The jury found that Bates did not intend to use the loaded magazine in the commission of a felony. Finally, the jury found Bates not guilty of intimidation.
 {¶ 13} The trial court sentenced Bates to a prison term of four years for failure to comply with an order or signal of a police officer and to time served on the possession of criminal tools charge. The trial court ordered the sentence to be served concurrent to an eight month prison term Bates was serving in an unrelated case.
 SUGGESTIVE, UNRELIABLE IDENTIFICATION {¶ 14} In his first assigned error, Bates asks this court to reverse the trial court's failure to exclude the unduly suggestive single photograph as unreliable; he also challenges the in-court identification.
 {¶ 15} This court has held the showing of a single photograph is "certainly suggestive."[1] In Stoval v. Denno,[2] the United States Supreme Court cautioned against the use of a single photograph. This court also has recognized that the number of photographs shown to a witness is one factor to be considered in determining the likelihood of a misidentification.[3]
 {¶ 16} A suggestive photograph alone goes to weight and not admissibility. Under due process of law when a challenged identification is unreliable, then testimony as to the identification and any identification in-court or out-of-court is inadmissible.[4] Due process demands a "fair assurance against the awful risks of misidentification."[5]
 {¶ 17} Generally, identification testimony is properly admitted unless the identification procedure was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification.[6] The court must consider the totality of the circumstances surrounding the identification.[7] In Neil v. Biggers,[8] the United States Supreme Court set forth the following factors to be considered in examining an identification procedure and its impact:
" * * * Whether under the `totality of the circumstances' theidentification was reliable even though the confrontation procedure wassuggestive. As indicated by our cases, the factors to be considered inevaluating the likelihood of misidentification include the opportunity ofthe witness to view the criminal at the time of the crime, the witness'degree of attention, the accuracy of the witness' prior description ofthe criminal, the level of certainty demonstrated by the witness at theconfrontation, and the length of time between the crime and theconfrontation. * * *"[9]
 {¶ 18} Before the out-of-court identification testimony is suppressed, the trial court must find that the procedure employed was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.[10] Moreover, although the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification.[11] Thus, although the identification procedure is suggestive, as long as the challenged identification itself is reliable, it is admissible.[12]
 {¶ 19} Where a suspect has been confronted by a witness before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances.[13] The required inquiry is, therefore, two-pronged, with the first question to be asked being whether the initial identification procedure was unnecessarily or unduly suggestive. Merely because a specific procedure is unnecessarily suggestive does not per se render the challenged identification inadmissible.[14] The focus then shifts to reliability, i.e., whether the out-of-court suggestive procedure created a very substantial likelihood of misidentification.[15]
 {¶ 20} We first begin with the fact that the single photograph is suggestive. Sgt. Franczak testified he had a limited opportunity to observe the suspect-driver, the suspect-driver escaped, and there were two individuals in the vehicle described as black males. Additionally, Sgt. Franczak testified he was 25 to 35 feet away from the suspect-driver and could not identify his clothing, facial features, or characteristics. These facts under Neil v. Biggers indicate the LEADS photograph identification was unduly suggestive.
 {¶ 21} We recognize that the historical case law in Ohio under Statev. Moody and State v. Brown make it clear that a suggestive procedure will not destroy the admissibility of an otherwise reliable identification.
 {¶ 22} In addressing the reliability issue, we must ask the question, did Sgt. Franczak's independent description of Bates control the identification of Bates or did the other facts such as the car, the cell phone, Bates' girlfriend's statements, and the LEADS photograph influence Sgt. Franczak's ultimate identification of Bates as the suspect-driver. In resolving this question, we are struck by the fact that Sgt. Franczak upon meeting Maurice Bates face-to-face failed to immediately identify Bates as the driver. Instead, Sgt. Franczak ran another LEADS photograph of Bates' girlfriend's brother, and released Bates.
 {¶ 23} Although this might at first instance seem good police work, it does raise concerns. Sgt. Franczak did not upon meeting Bates arrest him and positively identify him. Instead, he let Bates leave and focused his investigation on Tate's brother. When the brother did not fit the description, Sgt. Franczak refocused on Bates.
 {¶ 24} Additionally, we found further concern in the fact that Sgt. Franczak did not at least state that Maurice Bates' twin in the photograph resembled the suspect-driver, even a slight resemblance. Tate testified they were identical twins.
 {¶ 25} Finally, the trial judge asked during the suppression hearing whether there was a less suggestive reliable procedure. In this case on these facts, we believe there was. Once Bates emerged as a suspect, Sgt. Franczak could have easily enlisted a fellow officer to pull the LEADS photograph and prepare an array that included Bates. This crucial step would have been prudent and would have comported with due process, especially since Sgt. Franczak was the sole eyewitness and had a limited viewing time of the suspect-driver from a far distance, and gave a general description. But, more importantly, Sgt. Franczak had a number of reasons to believe Bates was the driver before he saw the photograph. This information stream tainted the single photograph identification, which made the identification unreliable. These facts would not be of concern but for the fact that there was another person in the car.
 CONCLUSION {¶ 26} This opinion in no way suggests that single photograph identification or show-up identifications are, per se, violative of the due process clause. We are urging that this case is different. Here, the officer had a general description of the driver that could have fit many individuals.
 {¶ 27} In Manson v. Brathwaite,[16] a single photograph identification case, the undercover police offer, gave such a reliable description that it enabled another officer to obtain the photograph, and it was the single photograph that the witness-policeman picked. It is important to note that the officer in Manson v. Brathwaite was within two feet of his suspect. These attendant factors enabled that court to conclude that the identification was reliable. The Manson v. Brathwaite
fact pattern does not exist here. As such, we have not strayed from the holding in Neil v. Biggers or Manson v. Brathwaite.
Judgment reversed and remanded for a new trial.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., Concur. Gallagher, J., Dissents.
[1] State v. Nur (Sept. 17, 1992), Cuyahoga App. No. 61077.
[2] (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.
[3] State v. Wells (Feb. 3, 1994), Cuyahoga App. No. 64575.
[4] Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.
[5] Manson v. Brathwaite, 432 U.S. 99, 97 S.Ct. 2243, 53 L.Ed.2d 140, citing the Dist. Court's Opinion at 527 F.2d at 371.
[6] See Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967,19 L. Ed.2d 1247; State v. Barnett (1990), 67 Ohio App.3d 760; Statev. Hill (1987), 37 Ohio App.3d 10.
[7] See Stovall v. Denno, supra; Foster v. California (1969),394 U.S. 440, 89 S.Ct. 1127, 22 L. Ed.2d 402; United States v. Burgos
(C.A.4, 1995), 55 F.3d 933; State v. Fanning (1982), 1 Ohio St.3d at 20, citing State v. Jackson (1971), 26 Ohio St.2d 74, paragraph two of the syllabus.
[8] Neil v. Biggers, supra.
[9] See, also, State v. Jells (1990), 53 Ohio St.3d 22, 27.
[10] See Barnett, supra. See, also, State v. Hill,37 Ohio App.3d at 14; State v. Blackwell (1984), 16 Ohio App.3d 100.
[11] See State v. Merrill (1984), 22 Ohio App.3d 119, 121;State v. Moody (1978) 55 Ohio St.2d 64, 67.
[12] See Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243,53 L. Ed.2d 140; Moody, supra.
[13] See State v. Brown (1988), 38 Ohio St.3d 305, 310.
[14] See Manson, supra, and Moody, supra; Merrill, supra.
[15] See Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967,19 L.Ed.2d 1247.
[16] Supra.
 DISSENTING OPINION