JOURNAL ENTRY AND OPINION
{¶ 1} Calvin Morrison ("Morrison") appeals his conviction received in the Cuyahoga County Common Pleas Court. Morrison argues that the trial court erred when it denied his motion to suppress, that the State of Ohio ("State") presented insufficient evidence and that his convictions are against the manifest weight of the evidence. For the following reasons, we affirm.
 {¶ 2} This case arises out of the shooting death of Rayan Wiltshire[1] ("victim") in the early morning hours of June 17, 2001, at Daly's Blue Mountain Inn ("Daly's"), located at 3019 East 116th Street in the City of Cleveland.
 {¶ 3} At the time of the incident, Daly's was a popular destination for Cleveland's Jamaican community. The establishment featured entertainment on weekends, usually in the form of disc jockeys. The disc jockey groups consisted of several people, the artists themselves, and the individuals they employed to transport the equipment. One of the groups was called LaBenz, of which the victim and Morrison were members.
 {¶ 4} John Morris ("Morris") was the bouncer at Daly's, and had been there for approximately four or five months. At the time of the shooting, Morris's duty was to sit at the back entrance of the establishment and check people for weapons and identification as they came in. The back door is at the end of an alleyway coming in from East 116th Street. The alleyway extends approximately fifty-two feet and is slightly over six feet wide. At the end of the alleyway is a small shed where Morris would sit as the customers came in. The customers would enter the shed through a door, Morris would search them, and they would then enter the bar through another door.
 {¶ 5} On the evening of June 16, 2001, Morris arrived at Daly's between 9:30 and 10:00 p.m. and took up his position in the shed. Morris claims that he searched all customers who entered the bar, including Morrison. At some point during the early morning hours of June 17, 2001, Morris heard several members of LaBenz, including the victim and Morrison, arguing inside the bar. Morris told the group of men to take their argument outside as they were blocking the entrance to the establishment. Morris observed the group of men exit the bar and enter the alley, where approximately ten to fifteen additional people were waiting to enter the bar. Morris stated that the victim and Morrison were arguing about music and money and that the victim told Morrison to "suck your momma."
 {¶ 6} Also outside at this time was Everett McKnight ("McKnight"). McKnight stated that he was a regular at Daly's and was a member of their domino club. McKnight stated that on June 16, 2001, he arrived at Daly's earlier in the evening and admittedly consumed alcoholic beverages. At approximately 2:30 a.m., McKnight walked outside Daly's to the end of the alleyway. McKnight stated that he was waiting for a friend and went outside to wait and enjoy the night. McKnight stated that as he was standing at the end of the alleyway, he observed Morrison coming back towards the alleyway. McKnight testified that Morrison pulled up his shirt and started to reach into the waistband of his pants.
McKnight relayed that after he observed Morrison's actions, he turned around and started heading back into Daly's. McKnight admitted that he was trying to get to safety. Before he could re-enter the bar, however, shots were fired and one bullet hit him in the foot.
 {¶ 7} Morris further testified that approximately fifteen minutes after he heard the victim and Morrison fighting, he heard a series of shots fired in rapid succession. The people in the alleyway rushed the door to get to safety inside the bar. As the people rushed into the shed, Morris exited and observed Morrison standing over the victim holding a gun. Morris stated that the victim was lying on the ground and that Morrison fled the area.
 {¶ 8} Rohan Whittingham ("Whittingham") was also a regular at Daly's bar. Whittingham was outside when the shooting occurred and one of the bullets grazed his hip. Whittingham left the scene before police officers could speak with him.
 {¶ 9} After the shots were fired, Bernice Patterson ("Patterson") a long-time employee of Daly's, approached the victim. Patterson had been working inside the deli section of Daly's when she heard the gunfire. After discovering that the victim did not have a pulse, she ran back inside and called police. Patterson testified that both the victim and Morrison were members of LaBenz and were regulars at Daly's.
 {¶ 10} Officers and EMS arrived on the scene. EMS transported the victim to the hospital where he was pronounced dead. EMS also treated McKnight and transported him to the hospital where he underwent surgery on his foot. Officers spoke with Morris and transported him to the police station where they obtained a written statement. Officers stated that they immediately learned that the first name of the shooting suspect was Calvin, and obtained his physical description, and the description of his vehicle.
 {¶ 11} Officers recovered the victim's car nearby and it listed the victim's address as being on Arcade Avenue. Four days later, officers recovered another vehicle that had been abandoned on East 146th Street and Ross Avenue. The vehicle was registered to Calvin Morrison, with a street address identical to the victim. After officers learned Morrison's last name, they obtained a Bureau of Motor Vehicle photograph of Morrison and showed it to Morris, who positively identified the photo as Morrison, the individual he had seen standing over the victim holding a gun.
 {¶ 12} Officers then issued a warrant for Morrison's arrest.
 {¶ 13} On July 26, 2001, the Cuyahoga County Grand Jury returned a two-count indictment charging Morrison with aggravated murder and felonious assault. Both charges included a three-year firearm specification. After Morrison failed to appear, the trial court issued a capias for his arrest.
 {¶ 14} Nearly four years later, authorities located Morrison in custody in Decalb County, Georgia. Prosecutors instituted extradition proceedings and returned Morrison to the jurisdiction of the Cuyahoga County Common Pleas Court.
 {¶ 15} In April 2005 the trial against Morrison began. Prior to trial, Morrison moved to suppress the identification testimony of Morris. The trial court conducted a hearing but ultimately denied Morrison's motion to suppress, finding that the use of a single photograph was not impermissibly suggestive. The trial commenced but after the jury could not reach a verdict, the trial court declared a mistrial.
 {¶ 16} On July 18, 2005, the State began the second trial of Morrison. At the close of the State's case, Morrison's attorney moved for a judgment of acquittal, which the trial court denied. Morrison's attorney chose not to present any witnesses and renewed the motion for acquittal. Again, the trial court denied Morrison's motion. Morrison's attorney also renewed his objection to the trial court's denial of his motion to suppress.
 {¶ 17} The jury convicted Morrison of aggravated murder, felonious assault, and both firearm specifications. The trial court sentenced Morrison to twenty years to life imprisonment on the charge of aggravated murder, three years for both firearm specifications, and two years for the charge of felonious assault.
The trial court ordered the sentences to be served consecutively.
 {¶ 18} Morrison appeals, raising the three assignments of error contained in the appendix to this opinion.
 {¶ 19} In his first assignment of error, Morrison argues that the trial court erred when it denied his motion to suppress the witnesses' identification testimony. Morrison claimed, in his motion to suppress, that the photo shown to Morris was impermissibly suggestive because it was the only one shown to the witness. This argument lacks merit.
 {¶ 20} In his motion to suppress and during the oral hearing, Morrison argued to suppress the identification testimony of both Morris and McKnight. However on appeal, Morrison addresses only the identification testimony of Morris. As such, this assigned error will address the identification testimony of Morris.
 {¶ 21} At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.State v. Mills (1992), 62 Ohio St.3d 357, 366; State v.Fanning (1982), 1 Ohio St.3d 19, 20. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting those properly supported facts as true, we must independently determine, as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657; State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 22} "When ruling on a motion to suppress an identification, the trial court must first determine whether the identification procedure was unduly suggestive." State v.Bankhead (February 25, 2000), Hamilton App. No. C-990139. If the procedure was impermissibly suggestive, then the court shall proceed to the second step to determine whether there was a substantial likelihood of misidentification. Bankhead, supra. In this step, the trial court must consider the "totality of the circumstances" under which the pretrial identification was made in order to determine whether the identification was reliable.State v. Bates, Cuyahoga App. No. 84654, 2005-Ohio-3411. InNeil v. Biggers, (1972), 409 U.S. 188, 93 S.Ct. 375, the United States Supreme Court set forth the following factors to be considered in examining an identification procedure and its impact:
"* * * Whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *"
 {¶ 23} This court has held that the showing of a single photograph is "certainly suggestive." State v. Nur (June 17, 1992), Cuyahoga App. No. 57132; Bates, supra. This court has also recognized that the number of photographs shown to a witness is one factor to be considered in determining the likelihood of a misidentification. State v. Wells (Feb. 3, 1994), Cuyahoga App. No. 64575; Bates, supra. However, although a single photograph is suggestive and creates flaws in the identification procedure; this factor does not, per se, preclude the admissibility of the identification. State v. Merrill (1984), 22 Ohio App.3d 119,121; Bates, supra. Accordingly, though the identification procedure is suggestive, as long as the challenged identification itself is reliable, it is admissible. Bates, supra.
 {¶ 24} In line with our previous decision, this court concludes the police detectives' use of a single photograph was impermissibly suggestive. We must now determine whether Morris' identification of Morrison is reliable.
 {¶ 25} In the present case, Morris testified that he knew Calvin from his frequent visits to Daly's. Morris stated that he only knew Calvin's first name but knew that he and the victim were members of LaBenz. Morris testified that on the night of the shooting, he observed Morrison and the victim in a heated argument both inside and outside Daly's. Morris then testified that approximately fifteen minutes after the argument, he heard shots fired. When he exited the shed attached to Daly's, he observed Morrison standing over the victim holding a gun. Morris stated that he was certain it was Morrison he observed with the handgun and that he recognized his shaved head and gold tooth.
 {¶ 26} However, at the time of the shooting, Morris also stated that there were approximately fifteen to twenty people in the alleyway waiting to enter Daly's. After the shots were fired, these people rushed into the bar while Morris rushed out. Nonetheless, Morris stated that he was able to see Morrison standing over the victim, and that no other people in the alleyway had guns in their hands. Morris stated that while inside the shed, he had an elevated position over those in the alleyway, thereby giving him a better view of the victim and Morrison. Finally, Morris testified that he had no doubt in his mind that Morrison was the individual he observed standing over the victim holding a gun.
 {¶ 27} In response, Morrison points out that the homicide detective did not show Morris the Bureau of Motor Vehicles photograph of Morrison until approximately three weeks after the crime occurred. However, the detective did not know Morrison's last name until they recovered his vehicle. Moreover, Morris's recollection of Morrison's identity as the shooter did not lapse as he had a prior relationship with Morrison.
 {¶ 28} Accordingly, we find competent, credible evidence supported the trial court's determination that the identification testimony should not have been suppressed. Though we disagree with the trial court's determination that the use of a single photograph was not impermissibly suggestive, we agree with the trial court's decision not to suppress the identification testimony. We find that the identification of Morrison, by Morris, was reliable and therefore, admissible.
 {¶ 29} Morrison's first assignment of error is overruled.
 {¶ 30} In his second assignment of error, Morrison argues that the jury's verdict is against the manifest weight of the evidence.
This assignment of error lacks merit.
 {¶ 31} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional cases in which the evidence weighs heavily against the conviction." Id. at 387. (Citations omitted.)
 {¶ 32} However, this court notes that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, paragraphs one and two of the syllabus; State v. Eley (1978),56 Ohio St.2d 169. The ultimate goal of the reviewing court is to determine whether the new trial is mandated. We should grant a new trial only in the "exceptional case in which the evidence weighs heavily against conviction." State v. Lindsey,87 Ohio St.3d 479, 483, 2000-Ohio-465.
 {¶ 33} In the present case, the State of Ohio charged Morrison with aggravated murder pursuant to R.C. 2903.01, which provides in pertinent part, no person shall purposely and with prior calculation and design cause the death of another. The State also charged Morrison with felonious assault pursuant to R.C. 2903.11, which provides in pertinent part, no person shall knowingly cause serious physical harm to another by means of a deadly weapon or dangerous ordnance, to wit, a loaded firearm. Finally, the State charged Morrison with two three-year firearm specifications pursuant to R.C. 2941.145, which provides in pertinent part that Morrison, while committing the offense, had a firearm on his person or under his control and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.
 {¶ 34} During trial, the State of Ohio presented the following evidence to support Morrison's convictions: Morris searched Morrison upon his arrival at Daly's; Morrison and the victim were members of the same music group; Morris observed Morrison and the victim in a verbal argument both inside and outside the bar; Morris heard the victim hurl verbal insults at Morrison; McKnight observed Morrison walk back towards Daly's and reach into the waistband of his pants; McKnight turned and headed toward the bar for safety; a bullet struck McKnight in the foot; Morris heard the gunshots and exited the shed attached to Daly's; Morris observed Morrison standing over the victim holding a firearm; and both Morris and McKnight knew Morrison from his visits to Daly's.
 {¶ 35} In response, Morrison argues that Morris' identification of Morrison was suspect, that McKnight's inebriated state made him an unreliable witness and that the police failed to fully investigate all leads in this crime. However, this court has previously determined that Morris' identification of Morrison, though impermissibly suggestive, was not unreliable. Additionally, the credibility of witness McKnight was a matter primarily for the jury to consider. Finally, Morrison's trial attorney's presented evidence of the police officer's investigation of this case. The jury simply found the greater amount of credible evidence supported Morrison's convictions for aggravated murder, felonious assault, and the three-year firearm specifications.
 {¶ 36} After viewing the entire record and based on the evidence contained therein, the trier of fact could reasonably conclude from substantial evidence that the State has proven the offenses beyond a reasonable doubt.
 {¶ 37} Morrison's second assignment of error is overruled.
 {¶ 38} In his third and final assignment of error, Morrison argues that the State presented insufficient evidence to convict him of aggravated murder. Morrison argues that the State failed to prove prior calculation and design, an element of aggravated murder. This assignment of error lacks merit.
 {¶ 39} This court notes that in his second assignment of error, Morrison candidly admits that "the evidence here is legally sufficient to establish guilt. * * * The evidence, if believed, would be sufficient to satisfy the elements of the crimes for which Mr. Morrison was convicted." Nonetheless, this court shall address the merits of Morrison's third assignment of error.
 {¶ 40} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261 as follows:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 41} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259 paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.)
 {¶ 42} The trial court defined prior calculation and design as follows:
"Prior calculation and design means that the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide which process of reasoning must have included a mental plan involving studied consideration of the method and the means with which to cause the death of another."
 {¶ 43} In State v. Jenks, supra, this court provided a summary of factors to consider when determining if the element of prior calculation and design is present.
"The trier of fact must look to the context in which the killing occurred to determine whether there was prior calculation and design. Some of the important factors to be examined and considered in deciding whether a homicide was committed with prior calculation and design include: whether the accused knew the victim prior to the crime, as opposed to a random meeting, and if the victim was known to him whether the relationship had been strained; whether thought and preparation were given by the accused to the weapon he used to kill and/or the site on which the homicide was to be committed as compared to no such thought or preparation; and whether the act was drawn out over a period of time as against an almost instantaneous eruption of events. These factors must be considered and weighed together and viewed under the totality of all circumstances of the homicide. When the evidence adduced at trial establishes that the victim was unknown to the accused prior to the crime, and that there was little or no preparation, but rather that the crime was an instantaneous eruption of events, then the trial court shall not charge the jury on aggravated murder."
 {¶ 44} In support of his conviction of aggravated murder, the State presented the following evidence: the victim and Morrison lived in the same residence; the victim and Morrison were members of the same music group; Morris searched Morrison upon his entry into Daly's and Morrison was unarmed; the victim and Morrison had been involved in a verbal altercation during which, the victim hurled verbal insults at Morrison; McKnight observed Morrison walk back towards the alleyway, reaching into his pants as he walked; Morris heard shots fired approximately fifteen minutes after Morrison and the victim were arguing outside; and, Morris observed Morrison standing over the victim holding a gun.
 {¶ 45} In response, Morrison argues the following: that Morris's claim that he searched Morrison and that he was unarmed when he entered Daly's is incredible; McKnight is not to be believed because he was inebriated on the night of the shooting; and that the State failed to present sufficient evidence that Morrison left, came back, and shot the victim.
 {¶ 46} We disagree with Morrison's arguments. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the element of prior calculation and design present in this case. Therefore, there was sufficient evidence to support Morrison's conviction for aggravated murder. Morrison's argument that the trial court should have reduced the charge to murder is without merit.
 {¶ 47} Accordingly, Morrison's third and final assignment of error is overruled.
Judgment of conviction affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, P.J., And Kenneth A. Rocco, J., concur.
 Appendix Assignments of Error:
"I. The trial court erred in denying defendant's motion tosuppress the identification testimony of John Morris in violationof defendant's rights to due process of law under theFourteenth Amendment to the United States Constitution.
 II. The verdict is against the manifest weight of theevidence, in violation of defendant's rights to due process oflaw under the Fourteenth Amendment to the United StatesConstitution.
 III. The trial court erred in denying defendant's motion for aRule 29 judgment of acquittal on the charge of aggravated murder,and in refusing to reduce the charge to murder, in violation ofdefendant's rights to due process of law under theFourteenth Amendment to the United States Constitution."
[1] The victim was also known as Ricardo Thomas and Ricky Villa.