JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, state of Ohio, appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, defendant-appellee, Harry Cain, was indicted in Case No. CR-465760 on one count of felonious assault. This crime allegedly occurred on May 25, 2004. Richard Jobe ("Jobe") was the victim. Prior to this indictment against appellee, the state of Ohio had previously indicted Edward Wells for the same crime. The state eventually dismissed that case and indicted Harry Cain. In the case at bar, appellee filed a motion to suppress any eyewitness testimony regarding Jobe's out-of-court identification of appellee, as well as any in-court identification of appellee. On September 11, 2007, a suppression hearing was held. Following the hearing, the trial court granted appellee's motion.
 {¶ 3} On May 25, 2004, Jobe, who was 80 years old and living in Westlake, Ohio, was visiting his friend, Melanie Williams, at her apartment on Ansel Road in Cleveland, and left after midnight. Shortly after leaving the apartment, Jobe was approached by a male who asked him if his name was Richard. Upon responding "yes," the male attacked Jobe, severely beating him about his face and body. After the attack, Jobe managed to stagger back to Williams' apartment where Williams called the paramedics. *Page 2 
 {¶ 4} Subsequently, the paramedics took Jobe to the Cleveland Clinic where Jobe provided a description to Detective Small of the Cleveland Police Department. Jobe's description was that of a black male, 5 feet 9 inches or 5 feet 10 inches tall, clean-shaven, and wearing a white T-shirt. While at the hospital, Williams came to visit and showed Jobe a picture, which Jobe identified as the defendant.
 {¶ 5} Jobe testified that upon seeing the picture he said "that's the guy."[1] After viewing the picture in court, Jobe said he was sure that the man in the picture was the man who assaulted him. Subsequently, after viewing the photo, Jobe identified the defendant sitting in court as the person who assaulted him.
 {¶ 6} Defendant filed a motion to suppress the eyewitness testimony on the grounds that the photo identification was impermissibly suggestive. Specifically, appellee argued that the identification procedure only involved one photograph, was conducted under the control of the police, was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable identification," and "was unreliable under the totality of the circumstance."
 {¶ 7} A suppression hearing was held before the trial judge on September 11, 2007. The state of Ohio called Jobe and Detective Small to the stand to testify. *Page 3 
Upon hearing the testimony, the trial judge ruled that the identification in the case was coercive, suggestive, and prejudicial. The state of Ohio now appeals.
 II. {¶ 8} Appellant's assignment of error provides the following: "The trial court erred in suppressing an out-of-court and in-court identification when the photo identification was conducted by a civilian and not a state actor."
 III. {¶ 9} Appellant argues in his sole assignment of error that the lower court erred when it suppressed the identification in this case. The evidence demonstrates that the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 {¶ 10} Jobe testified to a platonic relationship with his friend Melanie Williams whom he had met at a strip club on Cleveland's east side.[2] The circumstances surrounding the assault that night demonstrate significant unreliability on the part of the victim's identification that night. For example, Jobe, who was 80 years old at the time, testified that he was not wearing his glasses on that night. Jobe agreed that he used his glasses for reading and looking at pictures which were closer than three feet.[3] Jobe testified that it was very dark the night of the attack.[4] He further *Page 4 
testified that the assault happened very quickly, was totally unexpected, and he was in a state of shock afterward.[5] He testified that he was woozy after the assault.[6]
 {¶ 11} Jobe suffered a head injury from the beating, he had subdural bleeding, and his injury required a two-day hospital stay. Jobe had never seen his assailant prior to the assault or after the assault. Following the assault, Jobe returned to Williams' apartment, where Williams asked Jobe what happened. After Jobe told her what happened, she told Jobe that, "it was probably my ex-husband; because he is the kind of person who would do something like that."[7] *Page 5 
 {¶ 12} After Jobe was admitted to the hospital, Williams told him, "I'll bring you over a photograph and you look at it."[8] Williams did not witness the assault. Williams brought a photograph of appellee (state's exhibit 1), which Jobe identified. That photograph accurately depicted the way appellee looked in 2004, as well as in court at the suppression hearing. In the photo, which speaks for itself, appellee clearly weighed much more than 175 pounds, and he was definitely not "cleanly-shaven" as described by Jobe at the time of the incident. It should be noted that appellee, whose appearance at the hearing looked similar to his photograph, had a mustache and goatee.[9]
 {¶ 13} While at the hospital, Jobe, who had the photo of appellee in his possession, gave it to Detective Small when the detective came to the hospital. Detective Small did not show Jobe any photographs nor ask him to look at any photographic display. Detective Small testified that he called Jobe and spoke with him while he was in the hospital. Jobe described the assailant as a black male, 5 feet 10 inches or 5 feet 11 inches tall, and 175 pounds. The only other distinguishing characteristic that Jobe allegedly noted was that his assailant had a grin on his face when he was beating him. Coincidentally, the photo of appellee shown to him by Williams shows appellee grinning. Nowhere in Detective Small's *Page 6 
reports or Jobe's original written statement is there any mention of this grin on the face of the assailant.
 {¶ 14} The description that Jobe gave to Detective Small was that the assailant was 5 feet 10 inches to 5 feet 11 inches tall, and roughly about 170 to 175 pounds. At the hearing, Detective Small would not argue with appellee's weight appearing to be about 235 pounds. Detective Small, as part of his investigation, spoke with Jobe prior to Williams showing Jobe the photograph. He discovered that Williams had a photo of the suspect which she wanted to show Jobe. Instead of admonishing Jobe not to view this photograph until Detective Small showed him a proper photo spread, he merely told Jobe to tell Williams that he wanted to meet her at the hospital before she showed him the photo.[10]
Detective Small failed to take necessary steps to ensure control over the investigation procedures, including any identification procedures.
 {¶ 15} Williams then gave Detective Small the name of Edward Wells as the person depicted in the photograph.[11] This led to Wells' indictment. Detective Small did testify that Wells, who was a former Crips gang member, did weigh 175 pounds. *Page 7 
Detective Small also conceded that Jobe would not give any distinguishing characteristics of his assailant, other than him having a big grin on his face while he was beating him.
 {¶ 16} Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Neil v. Biggers (1972), 409 U.S. 188, 196-197.
 {¶ 17} A suggestive photograph alone goes to weight and not admissibility. Under due process of law, when a challenged identification is unreliable, then testimony as to the identification and any identification in court or out of court is inadmissible. Due process demands a fair assurance against the awful risks of misidentification. State v. Bates, Cuyahoga App. No. 84654,2005-Ohio-3411.
 {¶ 18} Identification testimony is properly admitted unless the identification procedure was so impermissibly suggestive that there was a substantial likelihood of irreparable misidentification. The court must consider the totality of the circumstances surrounding the identification. The following factors are to be considered in examining an identification procedure and its impact:
 "* * * Whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the *Page 8 crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
Id. See, also, State v. Jells (1990), 53 Ohio St.3d 22, 27,559 N.E.2d 464.
 {¶ 19} The evidence in this case supports the decision of the lower court. The victim, in his 80's, was attacked at night in a dark area outside. The victim was questioned after being severely beaten and when he was in shock. After being attacked, and while he was still at the hospital, the victim was shown a one-photograph "photo spread" by Williams. Williams showed a single photograph of the defendant to the victim, who then indicated that the individual in the photograph was the person who assaulted him.[12] The "photo spread" was done in the presence of a Cleveland police detective. *Page 9 
 {¶ 20} The identification in the case at bar was impermissibly suggestive and gave rise to a substantial misidentification. Appellee's friend, Melanie Williams, who did not witness the assault, basically tells a woozy, elderly man with a head injury who is in a state of shock that her ex-husband assaulted him. The identification was unreliable under the totality of the circumstances.
 {¶ 21} Accordingly, appellant's assignment of error is overruled.
 {¶ 22} Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and PATRICIA ANN BLACKMON, J., CONCUR
[1] Tr. 16.
[2] Tr. 19-22.
[3] Tr. 40.
[4] Tr. 41.
[5] Tr. 24.
[6] Tr. 32.
[7] Tr. 33. It should be noted that both Edward Wells, who was initially indicted, and appellee had children by Williams at the time. After the police investigation, Wells was originally determined to be the assailant, but his criminal case was dismissed.
[8] Tr. 35.
[9] Tr. 28.
[10] Tr. 61-63.
[11] Tr. 64-65.
[12] The defendant's attorney states in his motion for suppression filed on June 5, 2007, that Williams apparently bore a grudge against the defendant. Williams was unhappy with defendant for his failure to pay child support and other issues. However, Williams gave the police the name "Edward Wells" as being the person depicted in the photograph. Edward Wells was initially indicted, but the detective later realized that Edward Wells was not the person in the photo shown to the victim. Wells' case was eventually dismissed, and the appellee was later indicted. *Page 1