JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Richard Keck, brings this appeal challenging his counsel's failure to file a motion to suppress identification and his convictions for failure to comply with order or signal of police officer. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} The grand jury returned an indictment charging appellant with two counts of failure to comply with order or signal of police officer in violation of R.C. 2929.331.[1]
 {¶ 3} The matter proceeded to a bench trial on February 26, 2007 where the state presented the testimony of three witnesses: Joseph Grezlak ("Grezlak"), a Brecksville police officer; Daniel Anders ("Anders"), a Sergeant with the Independence police department; and James Keck, appellant's brother.
 {¶ 4} At trial, the following testimony and evidence was elicited: Grezlak, an experienced officer of twenty-nine and one-half years, observed a speeding vehicle while operating stationary traffic radar on Interstate 77 on November 18, 2006, at 7:53 in the morning. Grezlak described the vehicle as a 1994 Dodge Shadow, dark grey in color that was being operated at a speed of 100 mph. This was 40 mph over *Page 4 
the posted speed limit. Grezlak pursued the vehicle. Grezlak observed the vehicle being driven down the right shoulder and past several vehicles at this high rate of speed.
 {¶ 5} Grezlak noticed an Ohio temporary tag in the left rear window of the vehicle, which obstructed his view of the driver. He alerted dispatch of the plate number and description of the vehicle. The vehicle continued to weave through traffic and at times utilized the right and left shoulders to pass numerous other vehicles, including a large tractor trailer that almost struck the vehicle.
 {¶ 6} The vehicle made a sudden shift and exited onto the Interstate 480 interchange. Grezlak continued his pursuit of the vehicle. At this point, an Independence patrol officer joined the chase with his patrol vehicle. The vehicle struck a piece of road debris causing damage to the vehicle's coolant lines.
 {¶ 7} The Independence police officer "got up alongside the suspect vehicle and began to pace it * * * for four or five seconds." Grezlak reiterated during cross-examination that the Independence officer was next to the vehicle for several seconds. The vehicle then made a sudden change to the right and exited onto Granger Road. Grezlak followed behind the vehicle that was being operated westbound in the eastbound lanes until it crossed the divider and followed the proper course of traffic. The chase proceeded up Granger to East 126th
Street where the vehicle accelerated in the direction of several pedestrians on a sidewalk nearby. The vehicle continued to be operated at a high rate of speed while the officers slowed down for safety concerns. The vehicle drove through a red light and *Page 5 
proceeded towards a residential area at which point Grezlak called off the pursuit. Shortly thereafter, Cuyahoga Heights police officers advised Grezlak that Independence police officer Anders found the vehicle abandoned on Goodman Road. The pursuit lasted for a period of approximately ten minutes and for a distance of twelve and one-half miles.
 {¶ 8} Grezlak's vehicle automatically recorded the pursuit upon activation of his overhead lights. The tape was played during trial and admitted as Exhibit 2.
 {¶ 9} Several witnesses in the area where the vehicle was abandoned described two white males exiting it. Grezlak inventoried the vehicle and had it towed.
 {¶ 10} Appellant's brother, James Keck, was the registered owner of the vehicle.
 {¶ 11} Grezlak testified that he could not identify the driver of the vehicle. However, Officer Anders was able to identify the driver. Anders told Grezlak that he saw the driver and that he could identify him.
 {¶ 12} Grezlak obtained photographs of James Keck and appellant from the Bureau of Motor Vehicles. From these photographs, Anders immediately identified appellant as the driver.
 {¶ 13} Sgt. Anders confirmed his involvement in the car chase on November 18, 2006, and that a Dodge vehicle was being operated recklessly on the interstate. He first attempted to obtain a visual on the occupants of the vehicle. He pulled up next to the vehicle to get an identification. They were driving side-by-side at *Page 6 
approximately 80 mph. He said, "I attempted to get a good look at the driver, and I feel I got a pretty fair look. When I first pulled up, the driver made a quick look at me * * *." (Tr. 54.) He was able to observe the driver for about five seconds. They were about 15 to 20 feet apart. Sgt. Anders said he "would have been able to make a composite as far as describing him." (Tr. 69.) Sgt. Anders explained that he tries to "get good descriptions" because he was once involved in a fatal pursuit and takes it very seriously — his focus was on the driver.
 {¶ 14} He described the driver as having very dark hair, a strained facial expression, round forehead, pointer nose, moderate medium white complexion, and sad, sunken, focused eyes.
 {¶ 15} Sgt. Anders also made an in-court identification of appellant as the driver of the vehicle.
 {¶ 16} Sgt. Anders observed two people "bail out" of the vehicle on a dead-end street. He was able to observe "size and mannerisms of how [they] ran." (Tr. 56.) The driver came towards him and ran around the back of the car and in between the houses. Sgt. Anders secured the vehicle and called Brecksville police.
 {¶ 17} Sgt. Anders reiterated that he was able to get a look at the driver, both his physical characteristics as well as a "facial visual in the car." He told Grezlak that he had "pulled up next to the guy" and thought he "got a pretty good look at him." (Tr. 59.) *Page 7 
 {¶ 18} Grezlak asked Sgt. Anders to look at some BMV images for possible suspects. Sgt. Anders identified appellant but indicated he had gained weight since the time of the photograph.
 {¶ 19} Sgt. Anders identified State's Exhibit 1 as appellant's BMV image.
 {¶ 20} There was no physical evidence of any suspect taken from the vehicle.
 {¶ 21} Sgt. Anders testified he was even more sure of his identification of appellant after observing his walk and mannerisms.
 {¶ 22} James Keck, appellant's brother, testified that on November 18, 2006 he awoke to a call from a detective. The night previous, Keck had parked his car in front of his house and placed his keys inside the glovebox. Appellant may have known that Keck had a habit of keeping his keys in his car. Keck told the detective he believed his car was outside his home. The detective told him it had been impounded. Keck denied giving appellant the keys and expressed his belief that appellant had not taken his car. Although appellant and Keck were residing together at the time, Keck was unable to account for appellant's whereabouts on November 18, 2006.
 {¶ 23} In reaching its verdict, the court indicated it had reviewed the videotape of the chase. Specifically, the court noted, "the Court observed that the Independence police officer had a solid, not talking inaccurate, a solid five seconds for the identification process. And the Court did also observe there was no shoulder to shoulder with the other car." *Page 8 
 {¶ 24} "Therefore, the Court will find the identification was a solid one and finds the defendant guilty of both counts."
 {¶ 25} The court imposed a one-year prison sentence with credit for time served. Appellant presents three assignments of error for review.
 {¶ 26} "[1.] Mr. Keck's case was prejudiced due to ineffective assistance of counsel revolving around his failure to file a motion to suppress identification."
 {¶ 27} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. Strickland at 688. When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." Id. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. Id. at 694.
 {¶ 28} Failure to file a motion to suppress is not per se ineffective assistance of counsel. State v. Madrigal (2000), 87 Ohio St.3d 378, 389,2000-Ohio-448, 721 N.E.2d 52, quoting Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been *Page 9 
granted." State v. Kuhn, 9th Dist. No. 05CA008859, 2006-Ohio-4416, at 11, citing State v. Robinson (1996), 108 Ohio App.3d 428, 433,670 N.E.2d 1077. Thus, we must determine whether a motion to suppress would have been granted based on the above cited facts.
 {¶ 29} Appellant argues that the identification procedure was unduly suggestive and lead to an unreliable identification.
 {¶ 30} To determine that an unduly suggestive identification violates due process, we must determine under the totality of the circumstances it was unreliable. Neil v. Biggers (1972), 409 U.S. 188, 199,34 L.Ed.2d 401, 93 S.Ct. 375. As such, we will only set aside a conviction if the procedure used for identification was so impermissibly suggestive as to give rise a substantial likelihood of irreparable misidentification.Simmons v. United States (1968), 390 U.S. 377, 384, 19 L.Ed.2d 1247,88 S.Ct. 967.
 {¶ 31} In making our determination, "the factors to be considered * * * include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and confrontation." Biggers at 199.
 {¶ 32} Appellant maintains the array was unduly suggestive because Grezlak presented Sgt. Anders with only two photographs. We addressed this argument in State v. Morrison, 8th Dist. No. 86967, 2006-Ohio-3352, and determined that the presentation of only one or two photographs is a factor to consider in determining the *Page 10 
likelihood of misidentification and can be considered to be a suggestive identification procedure. However, we further determined, "though the identification procedure is suggestive, as long as the challenged identification itself is reliable, it is admissible." Id. at ¶ 23.
 {¶ 33} In this case, the identification was reliable. The evidence establishes that a seasoned police officer pulled up next to the vehicle for the express purpose of obtaining an identification of the driver. That officer had a solid opportunity to view the suspect, which he described in great detail and at length. Appellant fit the suspect's description. The officer was sure of his identification and had also observed the suspect's mannerisms and body type when he fled from the vehicle. He made his identification the same day he had observed the suspect. The officer was even able to say with accuracy that appellant had gained weight since his BMV photograph. At trial, Sgt. Anders stated he was even more sure of his identification having observed appellant's mannerisms and walk.
 {¶ 34} The officer's identification of appellant was reliable and admissible.
 {¶ 35} Based on the evidence and testimony in the record, trial counsel was not ineffective for not pursuing a motion to suppress identification that had little probability of being granted. This assignment of error is overruled.
 {¶ 36} "[2.] The trial court erred to Mr. Keck's prejudice when it overruled his motion for acquittal thereby causing his conviction to rest upon legally insufficient evidence. *Page 11 
 {¶ 37} "[3.] Mr. Keck's guilty verdict was against the manifest weight of the evidence thereby depriving him or due process protection."
 {¶ 38} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v.Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 39} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the *Page 12 
evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City ofCleveland (1948), 150 Ohio St. 303, 345, 82 N.E.2d 709.
 {¶ 40} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, 20 Ohio B. 215,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 41} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Martin at 720.
 {¶ 42} Appellant's convictions were based upon sufficient evidence and were not against the manifest weight of it. The sole basis of both appellant's second and *Page 13 
third assignments of error is that the state's evidence failed to establish his identity. Sgt. Anders' testimony provides both sufficient and credible evidence to establish appellant as the perpetrator of the alleged offenses. Accordingly, these assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., and ANN DYKE, J., CONCUR IN JUDGMENT ONLY
[1] Both counts included a furthermore specification that appellant operated the motor vehicle in a manner that caused substantial risk of serious physical harm to persons or property. *Page 1