[Cite as *State v. Frierson*, 2018-Ohio-391.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 105618

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERSA FRIERSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605421-A

**BEFORE:** Boyle, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 1, 2018

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender
BY:   Paul Kuzmins
         John T. Martin
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Michael Lisk
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Ersa Frierson, appeals his conviction. He raises six assignments of error on appeal:

1. Trial counsel was ineffective when he failed to challenge the single photo identification of the appellant as the alleged offender.

2. Trial counsel was ineffective when he failed to object to critical hearsay evidence that was used to connect him to the crime alleged.

3. Counsel was ineffective when he failed to request closing arguments.

4. The appellant was not provided the effective assistance of counsel where his lawyer failed to obtain the assistance of any eyewitnesses identification expert.

5. Appellant's conviction for drug trafficking is against the manifest weight of the evidence where his identification as the suspect was made under highly questionable and [sic] circumstances and in violation of Ohio R.C. 2933.83.

6. The trial court's verdict of guilty on once [sic] count of drug trafficking should be set aside as the trial court's verdict is inconsistent with its verdict on the other two counts.

**{¶2}** Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

**{¶3}** The Cuyahoga County Grand Jury indicted Frierson with one count of trafficking in violation of R.C. 2925.03(A)(1), one count of trafficking in violation of R.C. 2925.03(A)(2), and one count of drug possession in violation of R.C. 2925.11(A). Frierson waived his right to a trial by jury, electing to try the case before the bench.[1]

---

[1] The journal entry of conviction and sentencing journal entry indicate that Frierson tried his

The following evidence was presented at trial.

{¶4} On April 15, 2016, Detective Matos of the Cleveland Police Department's Vice Unit organized a drug sale between a confidential informant and a suspect known as "D." The sale was set to take place around 7:00 p.m. near West 116th Street and Lorain Avenue in Cleveland. After searching him for contraband, Detective Matos dropped off the informant, who was wearing a wire and was provided with "buy money" to purchase the drugs, near that location and then took a covered position nearby. Other officers from the Cleveland Police Department, including Detectives Duller and Pitts, were also nearby the sale location to effectuate a "take down" and arrest the suspect once the sale was complete.

{¶5} Detective Matos testified that the informant entered a gray minivan to complete the sale and then returned to her vehicle with a rock of crack cocaine. On cross-examination, Detective Matos explained that because the suspect fled the scene, officers were not able to account for the "buy money" used to purchase the crack cocaine. She testified that she never saw the driver of the minivan, but was able to record the van's license plate number.

{¶6} Detective Duller testified that after Detective Pitts and he, who were in the same vehicle, received confirmation that the sale was complete, they proceeded to the suspect's location. As the detectives came to an intersection on West 117th Street,

counts before a jury. Those clerical errors are to be corrected via a nunc pro tunc entry on remand from this court.

however, the suspect, who was fleeing from police, made a left-hand turn, crossing in front of and driving by the detectives' vehicle in the opposite direction. Detective Duller stated that he was in the passenger seat and was only 15 to 20 feet away from the defendant at the time he observed the suspect make the left-hand turn. He testified that his opportunity to view the driver was fairly quick, but that the lighting conditions were good as it was still early evening and that he remembered the driver's facial features.

{¶7} Detective Pitts testified that as he approached the intersection on West 117th Street, the minivan made a left-hand turn going between 35 to 45 m.p.h. and that he got a "real good look" at the driver, even though it happened quickly. Detective Pitts stated that he recognized the driver, but could not remember his name at the time. He testified that officers terminated the pursuit a short time later for safety purposes.

{¶8} Detective Matos testified that after the car chase, she searched through the Ohio Law Enforcement Gateway ("OHLEG"), the Cleveland Police Department's record-management system, with the minivan's license plate information. She testified that the minivan was registered to a woman and, after searching that woman's personal information, discovered that she and Frierson were acquaintances. Detective Matos testified that she also searched Lexus Nexus for information connected to the phone number that the confidential informant used to contact the suspect. She testified that the phone number was registered to a different woman who listed the same address that was listed for Frierson.

{¶9} Detective Matos testified that she then searched Frierson through OHLEG,

printed out a report with his photograph, and within a few hours of the car chase, showed it to Detectives Pitts and Duller. Both detectives identified Frierson as the driver and stated they were confident in their identification. Detectives Pitts and Duller also later identified Frierson as the driver of the minivan during the trial.

{¶10} The state then rested its case, and Frierson moved for directed verdict under Crim.R. 29. After hearing oral argument from both Frierson and the state, the court denied the motion. Frierson then rested its case without calling any witnesses and renewed his Crim.R. 29 motion, which the court denied. The court then adjourned the proceedings for deliberation without closing arguments.

{¶11} The court found Frierson not guilty of drug trafficking in violation of R.C. 2925.03(A)(1) and drug possession in violation of R.C. 2925.11(A), but found him guilty of drug trafficking in violation of R.C. 2925.03(A)(2). The court sentenced Frierson to one and a-half years of community control sanctions.

{¶12} It is from this judgment that Frierson now appeals.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

{¶13} The defendant carries the burden of establishing a claim of ineffective assistance of counsel on appeal. *State v. Corrothers*, 8th Dist. Cuyahoga No. 72064, 1998 Ohio App. LEXIS 491, *19 (Feb. 12, 1998), citing *State v. Smith*, 3 Ohio App.3d 115, 444 N.E.2d 85 (8th Dist.1981). To gain reversal on a claim of ineffective assistance of counsel, a defendant must show that (1) his "counsel's performance was

deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of *Strickland*'s test requires the defendant to show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. *Strickland*'s second prong requires the defendant to show "a reasonable probability that but for counsel's errors, the proceeding's result would have been different." *State v. Winters*, 8th Dist. Cuyahoga No. 102871, 2016-Ohio-928, ¶ 25, citing *Strickland*.

**{¶14}** When deciding claims of ineffective assistance of counsel, courts may analyze the two prongs out of order. *Id.* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed." *Strickland* at 697.

**{¶15}** While "[t]he right to counsel is the right to the effective assistance of counsel," "trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *Id.* at 686, citing *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *State v. Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, ¶ 26, citing *Strickland* and quoting *State v. Foster,* 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186. "Judicial scrutiny of defense counsel's performance must be highly deferential." *Sanchez* at ¶ 8, citing *Strickland*.

**{¶16}** Frierson argues that his counsel was ineffective for (1) failing to challenge the identification evidence, (2) failing to object to the state's hearsay evidence concerning

the results of two online searches establishing a connection between Frierson and the owner of the suspect's vehicle and phone number, (3) failing to request a closing argument, and (4) failing to obtain an eyewitness expert.

### 1. Failure to Challenge Identification

{¶17} "[S]ince the decision falls within matters of trial strategy, counsel is not required to file a motion to suppress evidence in every case." *State v. Price*, 8th Dist. Cuyahoga No. 90308, 2008-Ohio-3454, ¶ 19. As a result, trial counsel is not per se ineffective when it fails to file a motion to suppress. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Counsel's failure to file a motion to suppress constitutes ineffective assistance only when the defendant can show that the motion "would have 'had a reasonable probability of success' and affected the outcome of the case." *State v. Patterson*, 8th Dist. Cuyahoga No. 105265, 2017-Ohio-8318, ¶ 35, quoting *Sanchez.*

{¶18} An out-of-court identification must be suppressed if "the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992), citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

{¶19} In light of some of our prior decisions, we agree with Frierson that Detective Matos's showing of a single photograph to the two eyewitnesses, Detectives Pitts and Duller, was unduly suggestive. *See State v. Price*, 8th Dist. Cuyahoga No. 90308,

2008-Ohio-3454, ¶ 22; *State v. Morrison*, 8th Dist. Cuyahoga No. 86967, 2006-Ohio-3352, ¶ 23; *State v. Nur*, 8th Dist. Cuyahoga No. 57132, 1990 Ohio App. LEXIS 2552, *10 (June 21, 1990).

**{¶20}** Nevertheless, the detectives' out-of-court identification of Frierson may still be admissible if the identification is reliable. *Biggers* at 199-200. When examining whether a prior identification is reliable, the trial court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *State v. McGee*, 8th Dist. Cuyahoga No. 92019, 2010-Ohio-2081, ¶ 38, citing *Biggers*.

**{¶21}** In *State v. Price*, the appellant challenged his conviction arguing that his counsel was ineffective for failing to file a motion to suppress an out-of-court identification. We disagreed, finding that while the officer's showing of a single photograph to the victim was unduly suggestive, the victim's identification of the appellant was reliable because she saw him from a short distance, recognized the appellant but could not remember his name, and remained confident at trial that the appellant was the suspect. *Id.* at ¶ 22-24. As a result, we found that the motion to suppress would not likely have been successful and, therefore, the appellant's counsel was not ineffective. *Id.* at ¶ 25.

**{¶22}** In *State v. Keck*, 8th Dist. Cuyahoga No. 89637, 2008-Ohio-3794, the

appellant also argued that his counsel was ineffective for failing to file a motion to suppress the state's out-of-court identification. At trial, the state offered the testimony of a police officer who observed a vehicle traveling at a high rate of speed and attempted to pull the driver over. The officer testified that, at one point during the car chase, he pulled next to the vehicle while going 80 m.p.h. and got a "pretty fair look" at the driver. *Id.* at ¶ 13. The officer eventually gave up the pursuit but was able to later identify the appellant as the driver in a photo array. On appeal, we found that the officer's identification of the appellant was reliable because he had a "solid opportunity" to view the suspect even while driving 15 to 20 feet next to him at 80 m.p.h. *Id.* at ¶ 33. As a result, we found that the identification would likely not have been suppressed, and the appellant's counsel was not ineffective. *Id.* at ¶ 35.

{¶23} Based on our review of the evidence, we find that a number of *Biggers* factors support a finding that the motion to suppress would not have had a reasonable probability of success. Like *Keck*, the detectives testified that while brief, they had a good opportunity to observe the suspect when he turned within 15 to 20 feet of their vehicle during the early evening. Specifically, Detective Pitts testified that, even though he only saw him for two to three seconds, he "got a real good look" at the suspect. Further, "[a] strong showing of reliability can arise from the fact that a [witness] knew the perpetrator of a crime before the crime was committed." *State v. Huff*, 145 Ohio App.3d 555, 564, 763 N.E.2d 695 (8th Dist.2001). Like the victim in *Price*, Detective Pitts testified that he was familiar with the suspect, having multiple run-ins with him over his

25-year career, but could not remember his name at the time of the crime. *See also In re D.D.*, 2d Dist. Montgomery No. 22740, 2009-Ohio-808, ¶ 15 (holding that the victim's independent identification of the suspect prior to viewing the photo array as well as the victim's confidence offset the length of time between the crime and the identification). Additionally, the detectives' testimony reveals that they had a strong degree of attention and confirmed the suspect's identification within a few hours of the crime. Last, like *Price* and *D.D.*, both detectives testified that they were confident that Frierson was the suspect.

{¶24} In sum, a majority of the *Biggers* factors show that the identification was reliable and, therefore, that a motion to suppress the out-of-court identification would not have had a reasonable probability of success. Accordingly, we find that Frierson's trial counsel was not ineffective and overrule Frierson's first assignment of error.

### 2. Failure to Object to Hearsay

{¶25} Like the decision of whether to file a motion to suppress, "[o]bjecting is a tactical decision." *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46, citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object

essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 114, at ¶ 140.

{¶26} Here, the record shows that Frierson's trial counsel consciously chose not to object to the alleged hearsay evidence. In fact, while arguing his Crim.R. 29 motion, Frierson's counsel acknowledged that there was "an abundance of hearsay which [he] did not object to because it is a bench trial and this Honorable Court is fair and should * * * hear all of the facts." Moreover, Frierson's counsel seemed to argue that, based on the abundance of hearsay, the state could not satisfy its burden of proof, a strategy that proved successful as to two of the three counts listed in the indictment.

{¶27} Further, as acknowledged in Frierson's counsel's statement above, "in a bench trial, the trial judge acts as the trier-of-fact, and, unless it affirmatively appears to the contrary, a reviewing court will presume that the trial court acted impartially and considered only properly admitted evidence." *State v. Neal*, 8th Dist. Cuyahoga No. 89574, 2008-Ohio-1077, ¶ 11, citing *Columbus v. Guthmann*, 175 Ohio St. 282, 194 N.E.2d 143 (1963).

{¶28} In light of the above discussion, we cannot say that Frierson's counsel was ineffective. Accordingly, we overrule Frierson's second assignment of error.

### 3. Failure to Request Closing Argument

{¶29} "[T]he overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is

a denial of the basic right of the accused to make his defense." *Herring v. New York*, 422 U.S. 853, 858-859, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). The right to make closing arguments as part of one's defense is "unquestionably" violated in "situations where defense counsel requests an opportunity to give closing arguments and is clearly denied the right to do so." *State v. Bowersock*, 7th Dist. Monroe Nos. 05 MO 19 and 05 MO 20, 2006-Ohio-7102, ¶ 16. That right, however, can be waived when defense counsel fails to request and object to the omission of closing arguments. *State v. McCausland*, 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 15. "[S]uch waiver need not be express, intentional, or voluntary." *State v. Askia*, 5th Dist. Delaware No. 2012-CA-13, 2012-Ohio-4670, ¶ 33, citing *McCausland*.

{¶30} In *Askia*, the appellant argued that the trial court erred when it prohibited her counsel from making a closing argument. The Fifth District disagreed, finding that the appellant's counsel failed to renew its request for, and object to the omission of, closing argument after the court denied the appellant's Crim.R. 29 motion for acquittal. *Id.* at ¶ 36. As a result, the court found that the outcome of the trial was not affected by omitting closing argument, and therefore, no plain error existed. *Id.*

{¶31} While the "better practice would have been for the trial judge to ask counsel if he wanted to make a closing argument[,]" Frierson's counsel failed to request an opportunity to make a closing argument, both before and after he orally argued his Crim.R. 29 motion and, therefore, waived the right to make a closing argument. *State v. Neal,* 8th Dist. Cuyahoga No. 89574, 2008-Ohio-1077, ¶ 16. That waiver does not

constitute ineffective assistance because Frierson's counsel may have strategically chosen not to pursue a closing argument to prevent a rebuttal by the state and instead make the gist of his argument for his Crim.R. 29 motion, during which he would have the opportunity for rebuttal. *See Sanchez*, 8th Dist. Cuyahoga No. 103078, 2016-Ohio-3167, at ¶ 8, citing *Strickland* (holding that trial strategy cannot be a basis for a claim of ineffective assistance of counsel); *State v. Darling*, 8th Dist. Cuyahoga No. 72635, 1998 Ohio App. LEXIS 2726, *6 (June 18, 1998), citing *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995) (holding that waiving closing argument can be "a tactical decision made by defense counsel to prevent the state from splitting closing argument and staging a strong rebuttal."). Accordingly, we overrule Frierson's third assignment of error.

### 4. Failure to Obtain Eyewitness-Identification Expert

{¶32} As already stated, to prevail on a claim of ineffective assistance of counsel, Frierson must show that his trial counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674*,* at 687. The record suggests that Frierson's counsel strategically decided not to obtain an eyewitness expert, choosing instead to cross-examine and impeach the state's eyewitnesses. *See Madrigal*, 87 Ohio St.3d at 390, 721 N.E.2d 52 (finding that counsel's decision to impeach the state's eyewitnesses on cross-examination instead of calling an eyewitness expert did not constitute ineffective assistance of counsel). Further, while Frierson aptly identifies the

ways in which eyewitness experts can pinpoint issues with eyewitness accounts and assist the triers of fact, Frierson's arguments concerning what an eyewitness expert would have testified to is purely speculative. Additionally, to show what any eyewitness expert would have testified to requires evidence outside of the record and, therefore, not an argument we can appropriately consider on direct appeal. *Madrigal* at 391.

{¶33} As a result, we find that Frierson's trial counsel was not ineffective for failing to call an eyewitness expert. Accordingly, we overrule his fourth assignment of error.

## B. Manifest Weight of the Evidence

{¶34} In his fifth assignment of error, Frierson argues that his conviction for trafficking in violation of R.C. 2925.03(A)(2) was against the manifest weight of the evidence.

{¶35} Unlike sufficiency of the evidence, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.,* citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955).

{¶36} Analyzing a claim under the manifest weight standard requires us to

review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered.

*State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 58, citing *Thompkins*. We are required to give "due deference" to the factfinder's conclusions because "'the demeanor of witnesses, the manner of their responses, and many other factors observable by [the factfinder] * * * simply are not available to an appellate court on review.'" *Id.*, citing *Thompkins*; *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum,* 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990). As a result, "[d]eterminations of witness credibility are primarily left to the trier of facts." *State v. Jackson*, 8th Dist. Cuyahoga No. 93079, 2010-Ohio-3500, ¶ 27, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Accordingly, reversing a previous conviction and ordering a new trial under a manifest weight of the evidence claim should be saved for the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Bridges*, 8th Dist. Cuyahoga No. 100805, 2014-Ohio-4570, ¶ 67, citing *Thompkins.*

{¶37} R.C. 2925.03(A)(2) states that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * *, when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender[.]"

{¶38} Frierson challenges the evidence supporting his conviction, claiming that the method by which officers identified him as the suspect was "fatally flawed" and "untrustworthy" and that the officers' testimony was not credible. Frierson's arguments

are not well taken, however, because, as stated above, credibility determinations are primarily left with the trier of facts. While the phone and vehicle connections may have been tenuous to other triers of fact, the two connections made by detectives that identified Frierson as the suspect as well as the officers' testimony convinced the trial court that Frierson was guilty. We hesitate to undermine the trial court's credibility findings as nothing in the record compels us to believe that this is the exceptional case that favors a reversal on a manifest weight claim.

{¶39} Further, because Frierson does not argue that the trial court's findings as to the elements of his conviction under R.C. 2925.03(A)(2) were against the manifest weight of the evidence, we will not address that issue here.

{¶40} Accordingly, we overrule Frierson's fifth assignment of error.

## C. Inconsistent Verdicts

{¶41} In his sixth assignment of error, Frierson argues that the trial court's verdict is inconsistent because it found him guilty of drug trafficking in violation of R.C. 2925.03(A)(2) but not guilty of drug trafficking in violation of R.C. 2925.03(A)(1) and drug possession in violation of R.C. 2925.11(A).

{¶42} To be convicted of trafficking under R.C. 2925.03(A)(1), a defendant must intend to sell or offer to sell a controlled substance. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 32. To be convicted of trafficking under R.C. 2925.03(A)(2), a defendant "must prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * *, when the [defendant] knows or

has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the [defendant] or another person." Finally, to be convicted of possession of controlled substances under R.C. 2925.11(A), a defendant must "knowingly obtain, possess, or use a controlled substance[.]"

{¶43} Turning to the facts relevant to Frierson's assignment of error, the state presented testimony from three officers who testified that they searched the confidential informant prior to the buy and confirmed that he did not possess any controlled substances; that the confidential informant entered the suspect's minivan with "buy money"; and that upon returning to the officer's vehicle, the confidential informant had a rock of crack cocaine. The officers also testified that they did not search the confidential informant for the "buy money" after the exchange took place and were not able to discover if the suspect had the "buy money" because he fled. Based on that evidence, the court acquitted Frierson of trafficking in violation of R.C. 2925.03(A)(1) and drug possession in violation of R.C. 2925.11(A) and convicted him of trafficking in violation of R.C. 2925.03(A)(2).

{¶44} After examining the evidence as well as the elements for the charges against Frierson, the trial court's verdicts certainly raise a number of questions. *See State v. Taylor*, 4th Dist. Lawrence No. 15CA12, 2016-Ohio-2781, ¶ 23 (finding that the state produced sufficient evidence of the defendant's guilt for both R.C. 2925.03(A)(1) and (2) because it proved that the defendant "did more than just intend to sell, he actually knowingly sold oxycodone to the confidential informant"); *State v. Martin*, 8th Dist.

Cuyahoga No. 92236, 2009-Ohio-5223, ¶ 12-18 (finding that the state produced sufficient evidence to convict the defendant of trafficking in violation of R.C. 2925.03(A)(2) and possession in violation of R.C. 2925.11(A) based on the evidence showing that the defendant's jacket contained a rock of crack cocaine); *Cabrales* at ¶ 30 (holding "drug trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of the same controlled substance under R.C. 2925.11(A) are allied offenses of similar import because commission of the first offense necessarily results in commission of the second.").

**{¶45}** But "[a]n appellate court is not permitted to speculate about the reason for the inconsistency when it determines the validity of a verdict." *State v. Wingfield*, 2014-Ohio-2053, 11 N.E.3d 732, ¶ 31 (8th Dist.). Further, "[c]onsistency between verdicts on several counts of a criminal indictment is unnecessary[.]" *State v. Eason*, 8th Dist. Cuyahoga No. 103575, 2016-Ohio-5516, ¶ 68. "[A]n inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), citing *State v. Hicks*, 43 Ohio St.3d 72, 538 N.E.2d 1030 (1989). "This is so because the several counts of an indictment are independent, and a verdict responding to a designated count will be construed in the light of the count designated, and no other." *State v. Brown*, 8th Dist. Cuyahoga No. 89754, 2008-Ohio-1722, ¶ 29. "Inconsistent verdicts often reflect a factfinder's attempt to avoid redundancy or to grant leniency" and "may work against the government as well as the defendant[.]" *Id.*, citing

*United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *Lovejoy* at 444. "A defendant who benefits from a compassionate acquittal on one charge cannot fairly complain that it is inconsistent with his proper conviction on another." *Wingfield* at ¶ 31, citing *Powell*. Accordingly, a defendant's conviction will stand "irrespective of its rational incompatibility with the acquittal." *Eason* at ¶ 68, citing *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist.1985).

{¶46} To counter those cases, Frierson interestingly points out that "[t]he Ohio Supreme Court has yet to consider whether the verdict handed down subsequent to a bench trial is entitled to the same deference given to a jury's inconsistent verdicts across multiple counts in a criminal trial." Coinciding with his observation, Frierson argues that inconsistent verdicts handed down by a judge should not be accorded the same deference and cites to a number of federal and out-of-state cases that have enhanced review of a judge's inconsistent verdicts.

{¶47} In spite of his points, however, we find Frierson's argument and nonjurisdictional cases to be unconvincing under the facts presented in this case. First, we rejected a similar argument in *State v. Burke*, 8th Dist. Cuyahoga No. 54047, 1988 Ohio App. LEXIS 2442 (June 16, 1988), where we rejected the defendant's argument that inconsistent verdicts from a bench trial should be distinguished from those resulting from a jury trial. *Id.* at *5-6. Further, we have declined arguments to overturn *Burke* in a number of cases. *See State v. Williams,* 8th Dist. Cuyahoga No. 87218, 2006-Ohio-5325, ¶ 20-21 (upholding the trial court's "inconsistent" verdicts as to the defendant's counts

for burglary and theft); *State v. Pies*, 1st Dist. Hamilton Nos. C-990241 and C-990242, 2003-Ohio-3215, ¶ 31, quoting *State v. Lynch*, 8th Dist. Cuyahoga No. 53633, 1989 Ohio App. LEXIS 1092 (Mar. 30, 1989) (holding "'it is not necessary to fashion a higher standard for judges' than juries, thus permitting the ostensibly inconsistent verdict to stand."); *Brecksville v. Malone*, 8th Dist. Cuyahoga Nos. 75466 and 75651, 2000 Ohio App. LEXIS 587, *4-5 (Feb. 17, 2000). We find that the rationales underlying those cases are still appropriate and controlling today.

{¶48} Accordingly, we cannot say that the trial court's verdict acquitting Frierson of counts for R.C. 2925.11(A) and 2925.03(A)(1) but convicting him of a count for R.C. 2925.03(A)(2) justifies a reversal of that conviction, and we overrule Frierson's sixth assignment of error.

{¶49} Judgment affirmed. This case is remanded for correction of clerical errors in the journal entry of conviction and sentencing journal entry, which both indicate that there was a trial by jury, to reflect that the case was tried before the bench.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR