[Cite as *State v. Fields*, 2021-Ohio-1880.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109664 |
| v. | : | |
| DAVID FIELDS, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 3, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622275-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora Bryan, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Noelle A. Powell, Assistant County Public Defender, *for appellant.*

LARRY A. JONES, SR., P.J.:

{¶ 1} This is one of three appeals that defendant-appellant, David Fields ("Fields"), currently has before this court.[1] In this appeal, Fields challenges his convictions for aggravated robbery, kidnapping, and having weapons while under disability, arguing that his convictions were against the manifest weight of the evidence and he received ineffective assistance of trial counsel. Finding no merit to his appeal, we affirm.

{¶ 2} In 2017, Fields was charged in a seven-count indictment along with two codefendants, Cleveland Gresham ("Gresham") and Demetrius Clardy ("Clardy"), as follows: Counts 1 and 3 — aggravated robbery with one- and three-year firearm specifications, repeat violent offender specification, and notice of prior conviction; Counts 2 and 4 — kidnapping with one- and three-year firearm specifications, repeat violent offender specification, and notice of prior conviction; Counts 6 and 7 — having weapons while under disability.[2] Fields's case proceeded to a jury trial; Counts 6 and 7 were tried to the bench.[3] The following facts were adduced at trial.

{¶ 3} On July 28, 2017, around 3:30 p.m., a man wearing a surgical mask, long wig, hat, and oversized gloves entered Gustav Julian Jewelers in Parma. Store employees Roberta Askett ("Askett") and Julie Washington ("Washington")

---

[1] *See also State v. Fields*, 8th Dist. Cuyahoga Nos. 109675 and 109680.
[2] Count 5 did not apply to Fields.
[3] Codefendants Gresham and Clardy entered into plea agreements with the state of Ohio.

testified that the gunman, later identified as codefendant Clardy, held his gun on them and told them to clear the register. Clardy took between $200 and $400. Parma police arrived on scene, but Clardy had already fled in a Ford Taurus; the state theorized that Fields was the getaway driver.

{¶ 4} Askett and Washington informed the police that approximately 30 minutes prior to the robbery, three individuals came into the store and were acting extremely suspicious; it appeared as if they were "casing" the store.

{¶ 5} Parma recovered surveillance video from the jewelry store and the CVS pharmacy across Pleasant Valley Road. Surveillance inside the jewelry store showed three people inside the store approximately 30 minutes prior to the robbery. Those individuals were later identified as Rodney Brewer ("Brewer"), Kimberly Smith ("Smith"), and codefendant Gresham. Additional surveillance from the CVS across the street showed Smith and Brewer enter the CVS parking lot in a Chevy Trailblazer. Shortly thereafter, a Ford Taurus entered the parking lot. Surveillance showed Smith and Brewer talking back and forth with the occupants of the Taurus. Gresham got out of the Taurus, and he, along with Smith and Brewer, crossed Pleasant Valley Road and went into the jewelry store.

{¶ 6} CVS surveillance showed a man, later identified as codefendant Clardy, exit the Ford Taurus in a long wig, hat, oversized gloves, and surgical mask about 30 minutes later. Surveillance showed that Clardy ran across Pleasant Valley Road and entered the store, ran back out, and got into a Ford Taurus, which was waiting nearby. The car sped off.

{¶ 7} Smith testified that, on the day of the robbery, she drove her now-ex-boyfriend, Brewer, to Parma to see his friend, Fields. Smith drove her Chevy Trailblazer, and Brewer talked on her cell phone to Fields during the drive. Shortly after Smith pulled into the CVS parking lot, Fields pulled up, driving a Ford Taurus. Brewer talked with Clardy, Gresham, and Fields, who were all in the Taurus. According to Smith, she got out of her car and went into the jewelry store with Brewer and Gresham. She was interested in purchasing some jewelry. Smith testified that she and Brewer left the area prior to the robbery.

{¶ 8} Cell phone records showed that several calls were exchanged between Smith's and Fields's cell phones in the hours leading up to the robbery. Fields's cell phone also "pinged" in several key locations around the time of the robbery. It pinged on the tower at Pleasant Valley Road next to the jewelry store at the time of the robbery and at a gas station located at East 55th Street and Superior Avenue in Cleveland shortly after the robbery. Surveillance video from the gas station showed the Ford Taurus at the gas station.

{¶ 9} Parma police learned through their investigation that a friend of Fields's girlfriend was the owner of the Ford Taurus. Smith testified that both she and Fields were with this friend, Alberta Darden ("Darden"), when Darden purchased the car. The Taurus's GPS tracker showed that the car pinged multiple times on the street where Fields lived in the days before the robbery.

{¶ 10} The jury convicted Fields of all counts and specifications, and the trial court convicted Fields of the having weapons while under disability counts.

The court sentenced Fields to a total of nine years in prison consecutive to the sentences he received in his other two cases for a total of 15 years in prison.

{¶ 11} Fields raises the following assignments of error:

I. David Fields was denied effective assistance of counsel during the jury selection process when, one, counsel failed to raise a *Batson* challenge and, two, when counsel failed to request to voir dire the jury on whether they heard Mr. Fields call the jury the composition of the nearly all white jury to be "racist."

II. Mr. Fields received ineffective assistance of counsel when counsel failed to object to multiple pieces of inadmissible evidence.

III. Fields's conviction is against the manifest weight of the evidence and, accordingly, Fields was denied his fundamental right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

IV. Mr. Fields received ineffective assistance of counsel when counsel failed to object to the trial court improperly providing the jury with a flight or "consciousness of guilt" instruction without a sufficient factual basis to support such an instruction, which violated Mr. Fields's state and federal due process right to a fair trial.

{¶ 12} In the first, second, and fourth assignments of error, Fields contends that he was denied the effective assistance of counsel. We will discuss these assignments of error together.

{¶ 13} To succeed on an ineffective assistance of counsel claim, the appellant must show that his or her trial counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

{¶ 14} Fields first claims that his counsel was ineffective for failing to raise a *Batson* challenge and voir dire the panel to see if they heard him say that the jury was "racist." Fields is Black, and the venire was composed of only three Black prospective jurors. The prosecutor used one of its preemptory challenges to dismiss one Black juror. A second Black juror was dismissed for cause, leaving only one Black juror remaining on the panel.

{¶ 15} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that peremptory challenges may not be used to challenge potential jurors solely on the basis of race. To support a *Batson* objection, a defendant must show that the prosecutor used peremptory challenges to remove from the venire members of a cognizable racial group, raising an inference that the use of the peremptory challenges was solely racially motivated. *Batson*, as modified by *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The burden then shifts to the prosecutor to present a neutral explanation for the use of the peremptory challenges. *Id.*

{¶ 16} After the state motioned to dismiss the second Black juror for cause, and the trial court agreed and granted the motion based on the juror's scheduling issues, the trial court cautioned the state that there were only three Black jurors on the venire panel and "if you think you're going to strike that last one, you're

wrong." The state responded that it did not intend to ask for the removal of the remaining Black juror.

{¶ 17} Fields has not shown that peremptory challenges were used to challenge potential jurors solely on the basis of race. Of the two Black jurors that were excused, one was excused for cause. Fields cannot make a prima facie case that the state engaged in racial discrimination and counsel was not ineffective for not raising a *Batson* claim.

{¶ 18} Fields next claims that his counsel was ineffective for not asking to voir dire the panel after he called the jury "racist." Although the record does not reflect what Fields said, the record does reflect that counsel for Fields informed the court that Fields had said the jury was "racist" and counsel was concerned what effect that might have on the jury. The trial court stated that it did not hear Fields's comment. The record does not indicate that this comment had any impact on the jury, other than a juror looked at the defense table after the comment was made, and Field has failed to set forth clear evidence that this comment deprived him of a fair trial by improperly influencing the jury. *See State v. Sari*, 8th Dist. Cuyahoga No. 109676, 2021-Ohio-944, ¶ 13, citing *State v. Humphries*, 5th Dist. Stark No. 06CA00156, 2008-Ohio-388. Therefore, Fields has failed to establish that he suffered prejudice that would satisfy the second prong of the *Strickland* test described above.

{¶ 19} Fields next argues that his attorney was ineffective for failing to object to multiple pieces of evidence he claims were inadmissible. He argues his

attorney was ineffective for failing to object to the admission of testimony provided by Parma detectives that established ownership and possession of the Ford Taurus, contents of Bureau of Motor Vehicle Records, and Verizon phone records.

{¶ 20} The decision to object or not to object at trial ordinarily constitutes a question of trial strategy. *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 25, (8th Dist.), citing *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. Accordingly, "the failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

> Experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice.

*State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140. An attorney's "failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988).

{¶ 21} Fields has failed to satisfy his burden to demonstrate that the results of the proceedings would have been different in that the exhibits or testimony would have been excluded had counsel objected.

{¶ 22} Finally, Fields contends that his counsel was ineffective for failing to object to the trial court's jury instruction that stated that his flight and related conduct may be considered as evidence of consciousness of guilt.

{¶ 23} Counsel is not ineffective in failing to raise an objection that would have been properly overruled. *State v. Teasley*, 8th Dist. Cuyahoga No. 67819, 1995 Ohio App. LEXIS 3372, 11 (Aug. 17, 1995). The record contains sufficient evidence to charge the jury on Fields's role as the getaway driver who drove the Ford Taurus away from the jewelry store after the robbery.

{¶ 24} Because ineffective assistance of counsel requires a showing of both deficient performance and prejudice, Fields's ineffective assistance claim fails. Therefore, Fields's first, second, and fourth assignments of error are overruled.

{¶ 25} In the third assignment of error, Fields contends that his conviction is against the manifest weight of the evidence.

{¶ 26} When considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 27} Fields takes issue with Smith's testimony, noting that she was initially charged as a participant in the robbery and was offered a plea deal in exchange for her testimony against Fields. He also argues that much of the

evidence against him was inadmissible; although, he does not raise that as a specific argument on appeal except to claim that he received ineffective assistance of counsel.

{¶ 28} As the trier of fact, the jury was in the best position to see and hear the witnesses, and observe their demeanor, equivocation, and candor when it determined the weight to be given their testimony. The jury was aware of Smith's role in the robbery and her plea deal. In fact, the jury heard that Smith, at the time of trial, was in jail on a probation violation. She was handcuffed during her testimony. During cross-examination, Smith admitted she initially faced "significant prison time" for her participation in the robbery. Smith downplayed her role in the robbery, claiming that she was looking to purchase jewelry and was not "casing" the store for her cohorts to rob. She also claimed to have left the scene before the robbery took place.

{¶ 29} The jury had the opportunity to weigh Smith's credibility and determine whether or not they believed her testimony about Fields's role in the robbery. A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Maldonado*, 8th Dist. Cuyahoga No. 108907, 2020-Ohio-5616, ¶ 40. The jury heard all of the testimony, considered the evidence, and found the state's theory of the case credible, and we will not disturb the jury's verdict on appeal. Fields's convictions are therefore not against the manifest weight of the evidence.

{¶ 30} The third assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
LISA B. FORBES, J., CONCUR